UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| FRANCISCO JAVIER GONZALEZ GARCIA § § § | |
| v. § | CIVIL NO. 4:21-CV-650-SDJ |
| § | |
| MADONNA NASSER ADEEB RAMSIS § § § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Respondent Madonna Nasser Adeeb Ramsis's Motion for New Trial, (Dkt. #21), and Supplemental Brief in Support of Motion for New Trial, (Dkt. #26).[1] Petitioner Francisco Javier Gonzalez Garcia responded to the motion and supplemental brief. (Dkt. #27). The Court, having considered the motion, the subsequent briefing, the record, and the applicable law, **DENIES** Ramsis's motion and **ORDERS** S.J.G.'s return to Spain.

## I. BACKGROUND

The relevant background is set forth in the Court's prior memorandum opinion and order, *Garcia v. Ramsis*, No. 4:21-CV-650, 2022 WL 287031 (E.D. Tex. Jan. 31, 2022); therefore, the Court will only briefly summarize it here. Garcia, a Spanish citizen, and Ramsis, an Egyptian citizen, share one child, S.J.G., who is a dual citizen of the United States and Spain. Garcia and Ramsis previously were in a relationship but never married. Shortly after S.J.G. was born in New York, the family left the

---

[1] Garcia challenges Ramsis's supplemental brief on the ground that it is essentially an untimely amended motion for new trial. Because the Court would reach the same conclusion whether it considered the supplemental brief or not, the Court need not resolve this issue.

1

United States and moved to Egypt, where they lived for approximately one year and four months. They then moved to Spain, where they lived for approximately ten months. According to Ramsis, she and S.J.G. repeatedly traveled back to Egypt during this time, although they did not maintain a residence in Egypt and stayed with family when they visited.

In March 2020, Garcia relocated to Mexico on a temporary basis for work, and Ramsis and S.J.G. joined him there some months later. In November 2020, after spending three months in Mexico, Ramsis left with S.J.G., purportedly to travel to Egypt by way of the United States. However, when the plane landed in New York, Ramsis stayed in the United States with S.J.G., and the two did not board their flight to Egypt. Ramsis has retained S.J.G. in the United States to this day.

Garcia filed his Verified Complaint and Petition for Return of Child to Spain and Issuance of Show Cause Order, (Dkt. #1), in this Court on August 18, 2021. The Court held a bench trial on Garcia's petition. (Dkt. #10). After the bench trial, the Court issued an order in which the Court found that Spain was S.J.G.'s habitual residence. *Garcia*, 2022 WL 287031, at *4. Accordingly, the Court ordered that S.J.G. must be "promptly and safely returned to Spain." *Id.* at 7.

Instead of returning S.J.G. to Spain as ordered, Ramsis filed a motion for a new trial. In the motion, Ramsis contests the Court's finding that Spain was S.J.G.'s habitual residence. She appears to provide two alternative countries that should be considered S.J.G.'s habitual residence instead—the United States and Egypt. *See* (Dkt. #21 at 5, 7); (Dkt. #26 at 5, 7). In support of her motion, Ramsis submitted eight

new pieces of evidence: (1) her declaration; (2) a complete copy of her passport; (3) a timeline reflecting Ramsis's and S.J.G.'s trips between Egypt and Spain; (4) a comparison of the amount of time S.J.G. spent in Egypt and Spain; (5) a document confirming S.J.G.'s Head Start enrollment in Plano, Texas; (6) S.J.G.'s medical records from a pediatrician located in Plano; (7) Ramsis's petition in the Suit Affecting the Parent-Child Relationship action she filed in Texas state court in Collin County; and (8) S.J.G.'s passport.

## II. LEGAL STANDARD

Courts "may, on motion, grant a new trial on all or some of the issues . . . after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." FED. R. CIV. P. 59(a)(1)(B). "A motion for a new trial in a nonjury case . . . should be based upon a manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons." *Hicks v. R.H. Lending, Inc.*, No. 3:18-CV-0586, 2020 WL 2065637, at *1 (N.D. Tex. Apr. 29, 2020) (quotation omitted). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quotation omitted). The decision to grant or deny a motion for new trial is within "the sound discretion of the trial court." *Id.* (quotation omitted).

## III. DISCUSSION

Ramsis contends that a new trial is necessary in this case to prevent manifest errors of fact and law resulting from Garcia's allegedly false testimony that "Garcia,

3

Ramsis, and S.J.G.[] lived together in Malaga[,] Spain for ten months from the time they arrived in Malaga from Cairo until Garcia was transferred to Mexico." (Dkt. #26 at 2). Ramsis submitted additional evidence to support her argument that Ramsis and S.J.G. traveled between Egypt and Spain frequently and that S.J.G. spent more time in Egypt than in Spain. Ramsis also alleges that the evidence shows that S.J.G. is "well settled and secure" in the United States and thus should be permitted to remain in the country with Ramsis. (Dkt. #26 at 5). Having reviewed Ramsis's additional evidence and arguments, the Court finds no manifest error of law or mistake of fact, as the evidence makes it clear that S.J.G. did not habitually reside in either the United States or Egypt.

**A. The United States**

For the reasons stated in the Court's prior order, the United States cannot be S.J.G.'s habitual residence. Among other things, S.J.G. only lived in the United States for one month prior to Ramsis removing her to the United States in 2020, Ramsis and Garcia were not living in the United States at the time of S.J.G.'s birth, and Ramsis and Garcia are not American citizens. *Garcia*, 2022 WL 287031, at *4. Most importantly, Ramsis cannot establish the United States as S.J.G.'s habitual residence by unilaterally removing her to the country, as the relevant time period is the time "immediately before" removal or retention. *Id.* (quoting Hague Convention, art. 3).

Ramsis appears to argue that even if the United States is not S.J.G.'s habitual residence, the Court should refuse to order S.J.G.'s return to Spain pursuant to the "well-settled" defense. The Hague Convention provides that a court need not return a child to his or her habitual residence if: (1) more than one year has elapsed between

4

the date of the wrongful removal or retention and the date of commencement of proceedings; and (2) "it is demonstrated that the child is now settled in its new environment." Hague Convention, art. 12. Because Ramsis cannot satisfy the first requirement, she cannot rely on the well-settled exception to prevent S.J.G.'s return to Spain.

The well-settled defense does not apply if proceedings are commenced "before the judicial or administrative authority of the Contracting State where the child is" before "a period of less than one year has elapsed from the date of the wrongful removal or retention." *Id.* S.J.G. was wrongfully retained—at the earliest—on December 3, 2020, the day Ramsis chose to remain in the United States with S.J.G rather than board their flight to Egypt.[2] *See* (Dkt. #11 at 36–42). Garcia filed his Verified Complaint and Petition in this Court on August 18, 2021. *See* (Dkt. #1). Therefore, Garcia commenced proceedings before the appropriate judicial authority less than one year after S.J.G.'s wrongful retention in the United States, and the well-settled affirmative defense is unavailable to Ramsis. *See Belay v. Getachew*, 272 F.Supp.2d 553, 561 (D. Md. 2003) ("[A]ll of the courts to have touched upon the issue . . . have uniformly held that the filing of a petition in the *courts* 'commences' the judicial proceedings under the Convention."); *Romanov v. Soto*, No. 3:21-cv-779, 2022 WL 356205, at *4 n.10 (M.D. Fla. Feb. 7, 2022) ("Whether the Children have

---

[2] Contrary to Ramsis's assertion, S.J.G. was not wrongfully removed in March 2020, as her initial removal from Spain was not "in violation of" Garcia's "rights of custody." *Abbott v. Abbott*, 560 U.S. 1, 9, 130 S.Ct. 1983, 176 L.Ed.2d 789 (2010). Indeed, the family was reunited in Mexico mere months later, at which time Garcia continued to exercise his custody rights.

5

since become 'well-settled' in the United States is not an issue in this case as the Father filed the Verified Petition within one year of the retention." (citation omitted)).

Ramsis also attempts to rely on an additional affirmative defense not previously asserted—that Garcia either was not exercising custody rights at the time of removal or retention or that he "subsequently acquiesced in the removal or retention." *See* Hague Convention, art. 13(a). As to the former, Ramsis argues only that "Garcia never exercised care[,] custody[,] or control of S.J.G. alone." (Dkt. #26 at 5). But there is no requirement that Garcia exercise his custody rights alone. Ramsis's new-trial motion does not disturb the Court's reasons for determining that Garcia was exercising his custody rights at the time of S.J.G.'s wrongful retention in the United States. *See Garcia*, 2022 WL 287031, at *5.

As to the latter, Ramsis argues that Garcia "consented to S.J.G.'s removal from Mexico to travel through the United States." (Dkt. #26 at 5). But it was not S.J.G.'s initial removal from Mexico to the United States that was wrongful, as such removal did not violate Garcia's custody rights. Rather, it was Ramsis's retention of S.J.G. in the United States instead of continuing to Egypt as planned that was wrongful. Because Ramsis presents no evidence demonstrating that Garcia acquiesced to S.J.G.'s retention in the United States, Ramsis cannot avail herself of this defense.

Thus, even if the Court determines that Garcia misrepresented the facts at the bench trial, the only plausible alternative habitual residence for S.J.G. is Egypt.

**B. Egypt**

It is unclear whether Ramsis intends to argue that Egypt should be considered S.J.G.'s habitual residence. *See, e.g.*, (Dkt. #26 at 7 (arguing that because S.J.G. had

6

been in the United States for fourteen months at the time of trial, her "habitual country of residence would be the United States")); (Dkt. #26 at 9 ("S.J.G. should remain in the United States.")). The Court ordered Ramsis to submit briefing confirming whether she intends to argue that Egypt is S.J.G.'s habitual residence, (Dkt. #22), but Ramsis did not address this issue in her supplemental brief.

Regardless, the Court finds that Egypt is not S.J.G.'s habitual residence. Ramsis's trial testimony conflicts with any argument that S.J.G. was at home in Egypt prior to her removal to the United States, and Ramsis's new-trial motion does not contest the veracity of her own testimony. At trial, Ramsis testified that she is not safe in Egypt. *See, e.g.*, (Dkt. #15 at 41 ("In Egypt, I don't have law[s] to protect me as a woman.")); (Dkt. #15 at 43 ("[T]he people [in Egypt] attack me [for] being a Christian, and one of them hacke[d] my mail and my phone . . . . [I]n Egypt[ian] culture having a daughter from a non-marriage . . . is called haram, and they can kill me.")). During the trial, Ramsis presented a photograph of herself with extensive facial injuries, and she testified that individuals in Egypt caused those injuries in June 2020. *See* (Dkt. #15 at 43). Ramsis also testified that S.J.G. is not safe in Egypt. *See* (Dkt. #15 at 44 ("[I]t's kind of dangerous [in Egypt], my life and [S.J.G.'s] life.")). Ramsis stated that an individual in Egypt said that he would kill S.J.G. if he saw Ramsis there again. (Dkt. #15 at 43).

Moreover, Ramsis denied any intent to establish a residence in Egypt for S.J.G. To the contrary, Ramsis repeatedly testified that Garcia tried to force her to return to Egypt against her wishes. *See* (Dkt. #15 at 59 ("I was forced [to go to Egypt]. I told

7

[Garcia] so many times, no, I don't want [to]. And it is clear I don't want to go there. I am not safe there.")). Ramsis explicitly testified that she "cannot return . . . to Egypt," (Dkt. #15 at 44), and that she does not want S.J.G. "to [go] through what I [have] been through in [Egypt] with no law for women," (Dkt. #15 at 61). Ramsis's testimony contradicts a finding that Ramsis and/or Garcia intended to establish Egypt as S.J.G.'s home. *See Monasky v. Taglieri*, 140 S.Ct. 719, 727, 206 L.Ed.2d 9 (2020) ("Because children, especially those too young or otherwise unable to acclimate, depend on their parents as caregivers, the intentions and circumstances of caregiving parents are relevant considerations.").

Further, as stated in the Court's previous order, district courts look at the totality of the circumstances to determine a child's habitual residence. *See Smith v. Smith*, 976 F.3d 558, 561 (5th Cir. 2020). Considering Ramsis's trial testimony in conjunction with her new-trial motion and the evidence submitted in support of that motion, the Court finds that the totality of the circumstances continue to indicate that Spain is S.J.G.'s habitual residence. Though she disputes Garcia's timeline of S.J.G.'s movements, even Ramsis's evidence shows that S.J.G. resided in Spain for approximately eight months between May 2019, when the family moved to Spain, and March 2020, when Garcia temporarily relocated to Mexico. *See* (Dkt. #26-4). During this time period, Ramsis and S.J.G. only spent approximately two and a half months in Egypt. Before joining Garcia in Mexico, Ramsis and S.J.G. spent an additional four months in Egypt when Garcia's employer temporarily relocated him.

Ramsis argues that S.J.G. spent 24.7 months in Egypt. To reach this number, she includes more than seventeen months that the family spent in Egypt prior to May 24, 2019. Garcia himself testified that the family was living in Egypt during this time before they moved to Spain. The Court was aware of these seventeen months in Egypt and factored that time into its original analysis. *See, e.g.*, *Garcia*, 2022 WL 287031, at *1. Therefore, Ramsis's evidence establishes only that S.J.G. spent six and a half months in Egypt across four separate trips during the relevant time period, and Ramsis has not argued any intent to settle there permanently with S.J.G. This evidence does not establish that the Court made a mistake of fact in reaching its conclusion that Spain was S.J.G.'s habitual residence.

And though Ramsis claims that when Garcia moved to Spain, she and S.J.G. "moved in with [Ramsis's] parents" in Egypt, she reiterates that they "could not return to Cairo on a permanent basis because of [Ramsis's] unwed status with a child." (Dkt. #26-1 at 1); *see also* (Dkt. #26-1 at 2 ("I told [Garcia] I could not go back to Egypt permanently . . . .")). The passport and timeline evidence submitted by Ramsis, combined with the statements in her declaration, support the notion that Ramsis and S.J.G. frequently traveled to Egypt for the purpose of visiting family, not because S.J.G. was residing in the country. The family did not buy or rent a residence in Egypt after they left in 2019, and there is no evidence that they intended to return to living in Egypt. Though Ramsis claims that Garcia "consistently told [Ramsis] he did not know where [the family] would go [after Mexico]," (Dkt. #26-1 at 2), she does not address the signed lease for a residence in Spain in 2021, (Dkt. #11 at 68), or the

9

text messages showing that Ramsis left personal belongings in Spain, (Dkt. #11 at 31).

Because Ramsis has not pointed the Court to any error in its prior rulings, she has not proven her entitlement to a new trial.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Ramsis's Motion for New Trial, (Dkt. #21), is **DENIED**. S.J.G. is to be promptly and safely returned to Spain.

It is further **ORDERED** that the parties must file a joint report confirming their plan for the return of S.J.G. to Spain by no later than **April 14, 2022**.

**So ORDERED and SIGNED this 6th day of April, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE