UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| FRANCISCO JAVIER GONZALEZ GARCIA § § § | |
| v. § | CIVIL NO. 4:21-CV-650-SDJ |
| § | |
| MADONNA NASSER ADEEB RAMSIS § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Francisco Javier Gonzalez Garcia's Motion for Attorney's Fees and Costs, (Dkt. #40), and Supplemental Motion for Attorney's Fees and Costs, (Dkt. #43). Respondent Madonna Nasser Adeeb Ramsis did not file a response to either motion. Having considered the motions, the record, and the applicable law, the Court concludes that the motions must be **GRANTED in part and DENIED in part**.

### I. BACKGROUND

Garcia initiated this Hague Convention case regarding his former partner Ramsis's refusal to return their minor child S.J.G. to Spain. *Garcia v. Ramsis*, No. 4:21-CV-650, 2022 WL 287031, at *1–2 (E.D. Tex. Jan. 31, 2022). The Court held a consolidated show cause hearing and bench trial. On January 31, 2022, the Court found that Spain was the habitual residence of S.J.G. and ordered the prompt and safe return of S.J.G. to Spain. *Id.* at *7. But the case did not end with the Court's ruling.

About a month later, after learning that Ramsis had not yet complied with the Court's order, the Court ordered the parties to file a report confirming their plan for

1

returning S.J.G. to Spain. Instead of working with Garcia to come up with such a plan, Ramsis filed a motion for new trial. The arguments in the motion ignored the legal analysis set forth in the Court's prior order and contradicted Ramsis's trial testimony. Subsequently, Ramsis indicated that she would not return S.J.G. to Garcia until "10 days [after] this Court's denial of her Motion for New Trial and either this Court's refusal to stay the return or the denial by the Fifth Circuit to stay the return." (Dkt. #23 ¶ 2).

The Court denied the motion for new trial and again ordered the parties to file a plan for returning S.J.G. to Spain. *Garcia v. Ramsis*, No. 4:21-CV-650, 2022 WL 1036770, at *4 (E.D. Tex. Apr. 6, 2022). Ramsis failed to comply. Instead, she filed a notice of appeal and indicated that she would only return S.J.G. if the Fifth Circuit affirmed this Court's decision and Ramsis decided not to "file an application for Writ of Certiorari with the Supreme Court." (Dkt. #30 ¶ 2). Ramsis then filed a motion to stay the Court's return orders pending appeal. The next day, the Court denied the motion to stay. Ramsis also filed an emergency motion to stay in the Fifth Circuit, which was denied.

The Court subsequently held a hearing to enforce its orders that S.J.G. be promptly and safely returned to Spain. S.J.G. was transferred from Ramsis to Garcia at the hearing. The Court then issued a final judgment, which reiterated that costs and fees would be decided after Garcia filed a motion pursuant to 22 U.S.C. § 9007(b)(3). Garcia filed a motion seeking attorney's fees, court costs, and transportation costs. Ramsis did not respond to the motion. The Court later ordered

Garcia to submit documentation supporting the court costs he sought to recover, and Garcia filed a supplemental motion for costs with supporting documentation.

## II. LEGAL STANDARD

Where, as here, a court has ordered the return of a child to her habitual residence pursuant to the Hague Convention and the International Child Abduction Remedies Act ("ICARA"), the court must order the respondent to pay "necessary expenses incurred by or on behalf of the petitioner" unless doing so would be "clearly inappropriate." 22 U.S.C. § 9007(b)(3). The respondent bears the burden of showing that an award of fees and expenses is clearly inappropriate. *See id.* The expenses recoverable by the petitioner include court costs, legal fees, and "transportation costs related to the return of the child." *Id.*

## III. DISCUSSION

As an initial matter, the Court finds that an award of fees and expenses is not clearly inappropriate in this case. Ramsis did not respond to Garcia's motion, so she has not carried her burden to show otherwise. And the Court finds no other reason to deny Garcia's request. Therefore, the Court will turn to a consideration of the appropriate amounts to award to Garcia for attorney's fees, court costs, and transportation costs.

### A. Attorney's Fees

In the Fifth Circuit, reasonable attorney's fees are calculated using the lodestar method. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995) (per curiam). To determine the lodestar, courts must determine the reasonable number of hours expended by the attorney and the reasonable hourly rate for the

3

attorney and then multiply the number of hours by the hourly rate. *Id.* at 324. There is a strong presumption in favor of the lodestar amount, but it may be adjusted based on the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

The burden is on the fee applicant to "produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quotation omitted). And the fee applicant must produce contemporaneous billing records or other documents so the Court can determine which hours are compensable. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 755 (S.D. Tex. 2008). Finally, the fee applicant must show the reasonableness of the hours billed and must prove that he or she exercised billing judgment. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.E.2d 40 (1983). "The Court is also an expert on reasonableness of fees and may use its own experience in deciding a fee award." *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 298 F.Supp.3d 892, 904 (E.D. Tex. 2017). "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011).

### i. Reasonable number of hours expended

Garcia's attorneys seek to recover $70,023.75 for 199 hours of work performed by two attorneys—John J. Kappel and Brad M. LaMorgese—and two non-attorney support staff members identified only as "BG" and "LY." Ramsis does not contest the amount or reasonableness of the fees requested. Therefore, the Court will "use the

submitted time as a benchmark and exclude any time that is excessive, duplicative, or inadequately documented." *Walker v. City of Bogalusa*, No. 96-3470, 1997 WL 666203, at *6 (E.D. La. Oct. 24, 1997) (quotations omitted).

Although 199 hours is a significant amount of time, this case required additional legal work for months after the Court first ordered that S.J.G. be returned to Spain. After the Court ruled in Garcia's favor at the bench trial, Ramsis retained an attorney, repeatedly refused to comply with the Court's order, filed a motion for new trial, appealed the Court's rulings to the Fifth Circuit, and filed motions to stay in both this Court and the Fifth Circuit. The Court then was required to hold an additional hearing more than three months after its initial ruling to facilitate S.J.G.'s return to Spain. As such, the Court finds that an above-average number of hours is not per se unreasonable in this case.

However, after reviewing the records provided by Garcia's attorneys, the Court finds that some reductions are warranted to ensure reasonableness. First, Garcia's attorneys expended approximately 21.25 hours[1] solely in connection with the custody proceeding that was filed in the 401st Judicial District Court of Texas and later removed to this Court. These are not attorney's fees incurred in "an action brought under section 9003." 22 U.S.C. § 9007(b)(3); *see also Saldivar v. Rodela*,

---

[1] The Court is unable to determine the exact number of hours because Garcia's attorneys block billed their time. Courts disfavor block billing, as it impedes their ability to discern the number of hours spent on a particular task. *See Thomason v. Metro. Life Ins. Co.*, No. 3:14-CV-86, 2018 WL 1174086, at *3 (N.D. Tex. Mar. 5, 2018) ("Block billing prevents the court from accurately determining if the number of hours spent on any particular task was reasonable."). The Court has exercised its discretion to approximate the number of hours attributable to the custody proceedings.

5

894 F.Supp.2d 916, 936 (W.D. Tex. 2012) (declining to award fees for representation in divorce and custody proceedings because they did not constitute fees incurred in an action brought under ICARA). The Court determines that the following hours will be subtracted from the total time submitted by Garcia: 20.25 hours billed by Kappel and 1 hour billed by LY.

Second, the Court finds that some of the hours billed are inadequately documented. For example, multiple entries simply read: "Email to [Garcia]" or "Meeting with [Garcia]" and do not elaborate on the subject of such emails or meetings. Other entries reflect meetings between Garcia's attorneys or the provision of instructions to support staff, but again, these entries do not describe the subject of the meetings or instructions. "[A] district court may reduce the number of hours awarded if the documentation is *vague* or *incomplete*." *Kellstrom*, 50 F.3d at 324 (emphasis in original). "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Randolph v. Dimension Films*, 634 F.Supp.2d 779, 798 (S.D. Tex. 2009). This approach is appropriate in the instant case, as Garcia's attorneys block billed their time and Ramsis did not object to any billing entries. After a careful review of the billing records and supporting affidavit, the Court finds that an across-the-board reduction of 20% of Garcia's counsel's hours is justified.

Third, some of the billing entries reflect non-compensable clerical work. "The approach in [the Fifth] [C]ircuit is that neither attorneys nor legal assistants may

6

recover a fee award for clerical work." *Tow v. Speer*, No. H-11-3700, 2015 WL 12765414, at *8 (S.D. Tex. Aug. 17, 2015); *see also Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) ("Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical."). Here, four entries reflecting hours expended by non-attorneys are explicitly labeled "Secretarial," and the Court finds that the bulk of these entries reflects non-legal work. *See* (Dkt. #40-2 at 1). Similarly, other entries reflect time spent preparing notebooks, making logistical arrangements with interpreters and Court staff, copying and scanning documents, and preparing items for delivery. This is clerical work. *See, e.g.*, *Tow*, 2015 WL 12765414, at *9 (reducing the reasonable number of hours worked because lawyers and legal assistants billed for, inter alia, preparing filings, preparing copies, preparing mailings, scanning productions, and working on notebooks); *Hendrix v. Evergreen Hauling*, No. 1:18-CV-00114, 2019 WL 138160, at *2 (N.D. Miss. Jan. 8, 2019) ("Clerical work includes . . . communications which serve a purely logistical or organizational purpose, the filing of returns with the court, the service of documents, and the preparation of notices and cover letters." (quotation omitted)); *Black v. SettlePou, P.C.*, No. 3:10-CV-1418, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014) ("[H]ours spent drafting cover letters to the court, calendaring deadlines, filing appearance forms, ordering transcripts, [and] reorganizing case materials . . . are not compensable because they are clerical in nature."). In some instances, however, the billing records reflect some exercise of billing judgment through the decision not to bill for all hours worked. As such, the Court determines that the following hours will be subtracted from the total

7

time submitted by Garcia: 3.25 hours billed by Kappel; .5 hours billed by LaMorgese; 13.5 hours billed by LY; and .25 hours billed by BG.

### ii. Reasonable hourly rate

Turning to the second part of the lodestar calculation, the Court finds that the hourly rates requested by Garcia's counsel and non-attorney support personnel are reasonable. "An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested." *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-00295, 2016 WL 4594945, at *7 (S.D. Tex. Sept. 2, 2016) (citing *Kellstrom*, 50 F.3d at 328). Here, it is unclear whether the fees charged are the attorneys' customary billing rates. The rates are not contested. Thus, the Court will consider whether the requested rates are within the prevailing market rates.

First, the Court considers the rates charged by Garcia's attorneys. Kappel, a Board-certified family law attorney who has practiced law for approximately eight years, charged Garcia $325.00 per hour. (Dkt. #40-1 ¶¶ 2, 5). LaMorgese, a Board-certified family law attorney who has practiced law for more than twenty-five years, charged Garcia $525.00 per hour. (Dkt. 40-1 ¶¶ 3, 5). Kappel and LaMorgese "routinely handle cases brought under the Hague Convention and [ICARA]." (Dkt. #40-1 ¶ 5). Kappel avers that his and LaMorgese's rates are reasonable and necessary for Hague Convention cases filed in Texas by attorneys with Kappel's and LaMorgese's respective levels of experience and expertise. (Dkt. 40-1 ¶ 5). The only evidence of prevailing market rates is Kappel's statement that the requested rates

8

are reasonable "in Texas." *See, e.g.*, (Dkt. #40-1 ¶ 7(3)). Although the evidence Garcia's attorneys provided in support of their requested rates leaves much to be desired, the Court also considers Ramsis's failure to dispute the requested hourly rates. *See Tollett v. City of Kemah*, 285 F.3d 357, 369 (5th Cir. 2002) ("We question that $300 is a reasonable hourly rate. But, only because the City has not contested it, we hold that, based on Tollett's counsel's affidavit, the reasonable hourly rate is $300.").

The "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Id.* at 368 (quotation omitted). "Federal district courts in [the Eastern District of] Texas have found hourly rates at or above $400.00 to be reasonable in other cases." *Copeland v. Alamo Billing Co.*, No. 4:20-CV-393, 2021 WL 7500786, at *9 (E.D. Tex. Dec. 17, 2021) (collecting cases), *adopted by* 2022 WL 782742 (E.D. Tex. Mar. 14, 2022); *see also, e.g.*, *Salazar v. Maimon*, No. 4:11-CV-4186, 2013 U.S. Dist. LEXIS 189643, at *32 (S.D. Tex. Mar. 26, 2013) (finding hourly rate of $450.00 reasonable for experienced, Board-certified family law attorney in Hague Convention case), *aff'd*, 750 F.3d 514 (5th Cir. 2014). Further, in the Court's experience, rates of $325.00 and $525.00 per hour are appropriate. Given the case law on reasonable rates, the Court's experience, and Ramsis's failure to oppose the requested hourly rates, the Court finds that the hourly rates requested by Garcia's attorneys are reasonable.

Second, the Court turns to the rates charged by non-attorneys in this case. Garcia's attorneys seek to bill non-attorney support staff work at a rate between

$85.00 and $185.00 per hour, "with the lower rate applied to tasks that are more secretarial in nature." (Dkt. #40-1 ¶ 6). Two staff members, BG and LY, worked on this matter. Disregarding time excluded because it was spent on clerical tasks, BG's billing rate is $85.00 per hour (one entry) or $135.00 per hour (one entry). LY's billing rate for non-clerical work is $85.00 per hour (fifteen entries) or $185.00 per hour (four entries). Garcia's attorneys state that the requested rates are reasonable and necessary rates for work performed by non-attorneys in Hague Convention cases filed in Texas. (Dkt. #40-1 ¶ 6). In recent years, courts in the Eastern District of Texas have approved $90.00, $171.00, and $200.00 per hour as reasonable rates given the prevailing market rate for paralegals. *See Bissell v. Legends Underground Utils., Inc.*, No. 4:19-CV-00025, 2020 WL 2041423, at *4 (E.D. Tex. Apr. 28, 2020); *Branch Banking & Tr. Co. v. Re Rez L.P.*, No. 4:19-CV-630, 2021 WL 863766, at *11 (E.D. Tex. Jan. 8, 2021), *adopted by* 2021 WL 857937 (E.D. Tex. Mar. 5, 2021); *Copeland*, 2021 WL 7500786, at *9. In light of these cases, the Court's experience, and Ramsis's non-opposition to the motion, the Court finds that rates of $85.00, $135.00, and $185.00 per hour are reasonable for work performed by support staff.

Having found that the rates charged by Garcia's attorneys and their staff are reasonable, and having multiplied the rates by the reasonable hours charged at each rate, the Court finds that Garcia is entitled to $48,594.00 in attorney's fees, broken down as follows:

| Attorney/Staff Member | Reasonable Hours | Reasonable Fees |
|---|---|---|
| John Kappel | 76.4 | $24,830.00 |

10

| Brad LaMorgese | 43.2 | $22,680.00 |
| LY | 7.0 | $935.00 |
| BG | 1.4 | $149.00 |

### iii. *Johnson* factors

Finally, the Court finds that the *Johnson* factors do not counsel in favor of an adjustment to the lodestar amount. The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for the services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

In this case, the Court already considered factors (1), (3), (5), (7), and (9) when calculating the lodestar, so these factors do not warrant an adjustment. The remaining factors have no bearing on the fee award. As such, the Court awards $48,594.00 in attorney's fees.

11

**B. Court Costs**

Garcia next requests that the Court award him $1,342.40 in litigation costs.[2] Successful ICARA petitioners are entitled to recover two categories of litigation costs. First, "costs taxable under [28 U.S.C.] § 1920 are *per se* awardable under" ICARA. *Saldivar*, 894 F.Supp.2d at 943 (footnote omitted). Taxable costs under Section 1920 include fees of the clerk and marshal, fees for transcripts "necessarily obtained for use in the case," fees for printing and witnesses, "the costs of making copies of any materials where the copies are necessarily obtained for use in the case," and compensation for interpreters. 28 U.S.C. § 1920. Second, successful petitioners may recover costs not enumerated in Section 1920 so long as they constitute "necessary expenses" under 22 U.S.C. § 9007(b)(3). *Saldivar,* 894 F.Supp.2d at 943 (quotation omitted). "The Court traditionally exercises discretionary authority when awarding costs and will use the same discretionary authority to determine whether a claimed cost is a necessary expense." *Gallardo v. Orozco,* No. MO-13-CV-00024, 2013 WL 12129920, at *9 (W.D. Tex. Oct. 4, 2013).

Here, the Court finds that the following costs are per se awardable under Section 1920: (1) electronic filing fees associated with the filing of the Verified Complaint and Petition for Return of Child to Spain ($402.00); (2) costs associated with compensation of an interpreter ($440.00); and (3) transcript costs ($68.40).[3] *See*

---

[2] Garcia initially sought $1,610.70 in costs, but he indicated in his supplemental motion that he was no longer seeking to recover certain costs. *See* (Dkt. #43 ¶ 2).

[3] The Court finds that the transcript was necessarily obtained for use in this matter because Garcia relied on it in connection with the extensive post-trial briefing in this case.

12

*Saldivar*, 894 F.Supp.2d at 943–44 (awarding costs under Section 1920 for filing the case and compensating an interpreter); *Gallardo*, 2013 WL 12129920, at *9 (same).

The remaining expenses sought by Garcia are not awardable. Two items are too vague for the Court to conclude that they represent necessary expenses. First, Garcia seeks $23.00 in copying costs incurred on February 8, 2022. Copying costs are awardable under Section 1920 only "where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920. Garcia does not explain, and the Court is unable to determine, what was copied on February 8, 2022, or why such copies were necessary under either Section 1920 or Section 9007(b)(3). The Court declines to award this cost. Second, Garcia seeks $7.00 in copying expenses incurred on May 12, 2022. Neither the motions nor any of the attached exhibits explain what this copying charge is for or why it was a necessary expense under either Section 1920 or Section 9007(b)(3). And the cost was incurred ten days after Ramsis surrendered S.J.G. to Garcia and two days after Garcia confirmed that he returned S.J.G. to Spain. *See* (Dkt. #39 ¶ 2). The Court will not award this cost.

Costs incurred in connection with the custody proceeding that was removed to this Court also are not recoverable. Garcia seeks $402.00 in filing fees for that action. The custody case was not consolidated with the instant case, and it is inappropriate for Garcia to seek costs incurred in connection with that matter here. While Garcia did not provide any legal authority relating to his request, and the Court did not find any, the Court agrees with other district courts that have found that costs associated with ancillary proceedings are not costs incurred "during the course of proceedings in

13

the action." *Forcelli v. Smith*, No. 20-699, 2021 WL 638040, at *3 (D. Minn. Feb. 18, 2021); *see also Saldivar*, 894 F.Supp.2d at 936 ("[C]ost[s] incurred in divorce and custody proceedings . . . are not expenses incurred in an action brought under section [9007]." (quotation omitted)). Garcia does not attempt to defend this specific cost as a reasonable and necessary expense or identify a basis for the Court to award it. As such, the Court will not award this cost.

In sum, the Court awards Garcia $910.40 in litigation costs.

**C. Transportation Costs**

Finally, Garcia requests that the Court award him $7,340.34 in travel expenses he incurred in connection with this case.

As stated above, Section 9007(b)(3) requires the respondent to pay "transportation costs related to the return of the child." 22 U.S.C. § 9007(b)(3). Pursuant to this provision, courts generally award successful petitioners "airfare incurred in traveling to and from the United States to appear in court" and "expenses that were reasonable and necessary for a petitioner to participate in the ICARA proceeding and pick up the child." *Haylock v. Ebanks*, No. 13-432, 2013 WL 5410463, at *7 (E.D. La. Sept. 25, 2013) (quotation omitted); *see also Saldivar*, 894 F.Supp.2d at 946–47 (awarding expenses incurred in traveling to trial and in returning child to Mexico); *Guaragno v. Guaragno*, No. 7:09-CV-00187, 2010 WL 5564628, at *5 (N.D. Tex. Oct. 19, 2010) (finding petitioner's flights, hotel stay, costs of food during hotel stay, and cost of rental car or public transportation for trial and return of child to be "reasonable and necessarily incurred"), *adopted by* 2011 WL 108946 (N.D. Tex. Jan. 11, 2011). Here, the Court's inspection of the invoices and receipts submitted by

Garcia has revealed that while a majority of his travel expenses were reasonable and necessary to secure S.J.G.'s return, some lodging and rideshare expenses were not and thus are not recoverable.

Garcia's travel expenses can be placed into three categories: (1) flights and train rides; (2) lodging; and (3) Uber rides.

**i. Airfare and train tickets**

First, Garcia is seeking an award for the flight he took to the United States for the bench trial, the round-trip flight he took between Dallas and Houston to obtain a document S.J.G. needed to travel from the Spanish Consulate, and the flights he and S.J.G. took back to Spain.[4] The first and third flights reflect travel by Garcia related to the return of S.J.G. Similarly, the second flight was necessary to obtain S.J.G.'s return. As such, Garcia is entitled to an award of $2,813.64 in airline expenses.[5]

Relatedly, Garcia seeks reimbursement for: (1) his train ticket from Seville to Madrid in connection with his flight to Dallas for the May 2, 2022, hearing; and (2) his and S.J.G.'s train tickets from Madrid to Seville. Like the flights, these expenses were reasonable and necessary for Garcia to participate in the ICARA proceeding and were

---

[4] Garcia's airfare includes the cost of a flight from Spain to the United States on April 26, 2022. *See* (Dkt. #40-6 at 2). This additional flight was necessitated by Ramsis's failure to comply with the Court's return order. *See* (Dkt. #16 ¶ 7 ("[Garcia] is still in the United States and is available to receive and transport the child, but his current stay expires on March 9, 2022.")). Therefore, the Court finds that the cost of the round-trip flight was necessary both for the return of S.J.G. and for Garcia to appear in Court for the May 2, 2022, hearing.

[5] Garcia paid for certain expenses with Euros. Garcia stated that he used a conversion rate of 1.07 USD per Euro, and the Court followed that here because it appears to be reasonable and because Ramsis did not object. *See Euro Historical Prices*, WALL ST. J.: MKTS., https://www.wsj.com/market-data/quotes/fx/EURUSD/historical-prices (last visited Dec. 29, 2022).

related to S.J.G.'s return. As such, Garcia is entitled to an award of $229.14 for train tickets.

### ii. Lodging costs

Next, Garcia seeks an award for his lodging in Texas while this case was ongoing. This includes a stay in Plano from December 10, 2021, to January 14, 2022, for the show cause hearing, three stays in Dallas between February and March of 2022 while Ramsis appealed this Court's judgment, and a one-night stay in Madrid during Garcia and S.J.G.'s return to Spain. The Court finds that most of these lodging expenses were necessary. The first stay in Plano was required so Garcia could attend the bench trial in this matter, which was initially set for December 22, 2021, and then rescheduled to January 14, 2022. However, Garcia requests reimbursement for lodging in Plano twelve days before the date on which the show cause hearing was originally supposed to take place. The Court finds that these lodging expenses were not reasonable and necessary for Garcia to attend the proceeding. Therefore, the Court will reduce the award for Garcia's first stay in Plano by 25%.

Garcia next incurred lodging expenses for a thirty-one-day stay in Dallas between February 4 and March 7, 2022, a three-day stay in Dallas between March 10 and March 13, 2022, and an eight-day stay in Dallas from March 23 to March 31, 2022. These stays took place after the Court's January 31, 2022, order requiring that S.J.G. be returned to Spain. During this time, Ramsis refused to comply with the Court's order, filed a motion for new trial, and filed a status report indicating that she would not return S.J.G. until the Court denied her motion for new trial and the Court or the Fifth Circuit refused to stay S.J.G.'s return. Because Garcia was

attempting to secure S.J.G.'s return, and given that the parties were briefing a motion for new trial during this time, the Court finds that these stays represent reasonable and necessarily incurred expenses for the purpose of both the trial and S.J.G.'s return.

Finally, Garcia seeks reimbursement for a one-night hotel stay in Madrid on May 6, 2022. This expense was incurred for the purpose of returning S.J.G. to Sevilla and thus will be awarded. In total, the Court awards Garcia $2,763.03 for his lodging costs.

### iii. Rideshare costs

Garcia also seeks reimbursement for the cost of fifty-seven Uber rides between December 2021 and May 2022. Of those fifty-seven rides, eight were to or from the airport and four were to or from the courthouse. Six of the airport rides and all of the courthouse rides were taken so Garcia could participate in the ICARA proceedings and return S.J.G. to Spain, and thus fall squarely within the types of reasonable and necessary expenses that Section 9007(b)(3) covers. *See Saldivar*, 894 F.Supp.2d at 946–47 (awarding petitioner's car insurance, gas, and toll fees incurred while attending trial and returning child). Garcia took two costly Ubers to and from the airport on March 2, 2022. The purpose of the trip is unclear. Without further information, the Court cannot conclude that this trip was necessary or related to S.J.G.'s return. Thirteen additional rides were to or from the office of Garcia's attorneys, which the Court finds both reasonable and related to the return of S.J.G. And two rides represent trips between rental homes in which Garcia stayed during his time in the United States. Because the Court found that these two stays were

17

largely necessary, the Court finds it appropriate to award Garcia the cost of moving between residences.

Garcia's remaining thirty-one rides were trips between his residence and shopping centers, malls, restaurants, grocery stores, the airport, sightseeing locations, and other residences. Garcia provided no detailed description of any of the Ubers, instead describing them all simply as "Co[]mmuting in TX." And the only evidence supporting these expenses are Uber receipts, which simply supply an address and do not shed much light on the purpose of Garcia's trips. The Court finds that many of these trips do not represent necessary expenses.

First, Garcia took ten Ubers to and from restaurants, malls, and shopping centers between December 11 and December 19, 2021. As the bench trial in this matter was not set until December 22, 2021, the Court finds that these expenses were not reasonably and necessarily incurred. Second, Garcia took three Ubers to and from malls or shopping centers after May 2, 2022, the date on which S.J.G. was returned to Garcia at a hearing before the Court. Garcia has provided no justification for these trips, and the Court finds that they were not necessary or related to S.J.G.'s return. Third, Garcia took an Uber to and from the Sixth Floor Museum in Dallas on January 5, 2022. This trip was not necessary and was unrelated to S.J.G.'s return. Fourth, Garcia took a trip to and from an unknown residence on March 10 and March 13, 2022. Garcia did not disclose the purpose of the trip, so the Court is unable to conclude that it was a necessary expense. The Court will deduct the cost of the foregoing nineteen trips from its award.

The remaining fourteen rides reflect trips to and from malls and shopping centers, grocery stores, and restaurants during the pendency of this action. On the one hand, these trips are not necessarily "transportation costs related to the return of the child." 22 U.S.C. § 9007(b)(3). On the other hand, had Garcia and S.J.G. "been at home in [Spain], he would not have incurred [these] expenses." *Moonga v. Moonga*, No. 1:17-CV-2136, 2018 WL 4026020, at *3 (N.D. Ga. Aug. 23, 2018). And Garcia only "incurred these particular costs because he was required to be in a foreign country without means of transportation in order to obtain the rightful return of his child to [Spain]." *Id*. Therefore, the Court will award Garcia the costs associated with the remaining fourteen Uber rides.

In total, the Court awards Garcia $808.14 for his rideshare expenses, bringing the total amount awarded for travel expenses to $6,613.95.

### IV. Conclusion

For the foregoing reasons, it is **ORDERED** that Garcia's Motion for Attorney's Fees and Costs, (Dkt. #40), is **GRANTED in part and DENIED in part**. The Court grants Garcia's request for attorney's fees and costs but declines to award the full amount requested. The Court awards Garcia $48,594.00 in attorney's fees, $910.40 in court costs, and $6,613.95 in transportation costs.

**So ORDERED and SIGNED this 30th day of December, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

19